IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11CV203

| | |
|---|---|
| PATRICIA AVERETTE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DIASORIN, INC., )<br>)<br>Defendant. )<br>_____) | **ORDER** |

This matter is before the court upon Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**FACTUAL BACKGROUND**

Plaintiff was employed by the Defendant DiaSorin, Inc. as an application specialist from May of 2008 until she was terminated in July of 2009 at the age of 51. She was primarily assigned to the facility of DiaSorin's client, Labcorp, in Burlington, North Carolina. While at Labcorp, Plaintiff was supervised by Jason Prokop, and worked with co-worker Patrick Yauger ("Yauger"). Plaintiff alleges that she was "harassed" by Yauger in that Yauger:

> allow[ed] improper attire in the lab work environment, verbally offens[ive] statements directed at the Plaintiff, regularly blaming the Plaintiff for work related problems not attributed to her, and Yauger allowing the use of damaged or malfunctioning medical equipment to conduct work assignments and medical diagnostics . . ..

(Compl. ¶ 9).

Plaintiff alleges she reported Yauger's behavior to Defendant's human resources representative Tracy Clemens, to no avail. (Compl. ¶ 7).

In July of 2009, Plaintiff and Yauger were transferred to another client location,

Millennium Laboratory, where Yauger "frequently and on various occasions harassed the Plaintiff" by: "intentionally sabotaging analyzers that the Plaintiff was responsible for setting up, removing instrument settings and allowing technicians to use faulty instruments despite the Plaintiff placing notes on the machines not to do so," and "directing technicians to delete instrument data that the Plaintiff had painstakingly worked on for several hours causing instruments to malfunction and produce inaccurate data." (Compl. ¶ 13). Plaintiff also alleges that Craig Hill, a Millennium Laboratory employee "continually harassed" the Plaintiff by:

> entering the lab wearing a bathing suit, flip flops, and no gloves . . .; refusing to undergo the complete training the Plaintiff was scheduled to perform; [and] complaining to the Plaintiff about DiaSorin not making single use control tubes and then angrily throwing such glass tubes into biohazard bags causing them to shatter and nearly hit the Plaintiff in the face.

(Compl. ¶ 14).

Plaintiff asserts that she reported the conduct of Mr. Yauger and Mr. Hill to her supervisor and also "notified the Occupational Safety and Health Division of the North Carolina Department of Labor." (Compl. ¶ 15).

Plaintiff also alleges that she sought treatment for tendonitis in her elbows in July of 2009 and notified her supervisor and human resources that she intended to file for medical leave on July 9, 2009 pursuant to the Family Medical Leave Act ("FMLA"). (Compl. ¶ 16). Plaintiff alleges that her doctor "submitted FMLA documentation" regarding her tendonitis and requested a two month leave period. The next day Plaintiff alleges she was terminated for "failing to perform assigned tasks at Millennium Labs and for poor performance." (Compl. ¶ 20). Plaintiff alleges that she was replaced by a male in his early thirties who was less qualified and less experienced. (Compl. ¶ 27).

Plaintiff filed an EEOC charge, which she has attached to her Complaint, in which she

2

checked the boxes for age discrimination and retaliation. A right-to-sue letter was issued on December 20, 2010. Plaintiff filed this lawsuit on March 22, 2011 in state court and Defendant timely removed the action to this court. In her Complaint, Plaintiff asserts causes of action for: (1) age discrimination "in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*."; (2) retaliation in violation of Title VII, the FMLA and "OSHA"; (3) intentional infliction of emotional distress or in the alternative, negligent infliction of emotional distress; (4) negligent retention and supervision; and (5) vicarious liability. Defendant has moved to dismiss Plaintiff's Complaint in its entirety.

**DISCUSSION**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). However, the court need not accept legal conclusions drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments. *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Moreover, "[t]hreadbare recitals of the elements of a case of action, supported by mere conclusory statements" are insufficient to survive a 12(b)(6) motion. *Ashcroft*, 129 S.Ct. at 1942.

Defendant moves pursuant to Rule 12(b)(1) to dismiss Plaintiff's first cause of action for age discrimination "in violation of Title VII" for failure to exhaust administrative remedies. To the extent that Plaintiff seeks any relief under Title VII, Defendant is correct. Title VII does not protect an employee from discrimination based on age. The only protected categories under Title VII are race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e-2. Age discrimination is prohibited by the Age Discrimination in Employment Act ("ADEA"), 29

3

U.S.C. §§ 621, *et seq.*. It appears that Plaintiff's counsel has simply cited the wrong statute. The court hereby dismisses any claims Plaintiff asserts under Title VII for failure to exhaust her administrative remedies.

Defendant next argues that Plaintiff's claim for age discrimination must be dismissed in light of *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343 (2009). In *Gross*, the Supreme Court interpreted the ADEA to require a plaintiff to establish that age was the "but-for" cause of an employer's adverse action, not simply a contributing or motivating factor. Thus, it is not enough that age be *one of* the reasons for Plaintiff's termination; it must be *the* reason Defendant decided to terminate her. Plaintiff's Complaint alleges that "her age was *a factor* in Defendant's decision to terminate her." (Compl. ¶ 27) (emphasis added).

There is a disagreement among lower courts as to whether the *Gross* standard applies at the pleading stage and the Fourth Circuit has not addressed the issue. *See Lowe v. American Eurocopter, LLC*, 2010 WL 5232523, *6 at n. 5 (N.D.Miss. December 16, 2010) (noting the disagreement among district courts). This court likewise need not address this issue at this time because Plaintiff's ADEA claim fails for other reasons. Plaintiff's age discrimination claim merely alleges in a conclusory fashion that age was a factor in her termination. She alleges that she is in the protected age category and that she was replaced by a younger worker in his thirties. Other than those barebones allegations, there is nothing in her Complaint to suggest that she was fired because of her age. While Plaintiff is not required to plead a prima facie case of age discrimination to survive a 12(b)(6) motion, she must plead enough facts to "nudge[ ]" claims "across the line from conceivable to plausible." *See Iqbal*, 129 S.Ct. at 1951. Plaintiff has failed to do this. All of Plaintiff's allegations of "harassment" do nothing more than establish that she did not get along with her co-workers, not that the Defendant or anyone else harbored any sort of

discriminatory animus based upon Plaintiff's age. Plaintiff's allegations simply fall short of a plausible claim of age discrimination.

Defendant likewise argues that Plaintiff's claim of retaliation in violation of the FMLA fails to state a claim because she does not allege that her request for medical leave was the "but for" cause of her termination. Defendant correctly notes that while the Fourth Circuit has not decided whether the mixed-motive framework established by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), applies in FMLA cases, some federal courts have recognized that "there is a serious question as to whether the mixed-motive theory of FMLA retaliation survives . . ." *Gross*. *See Burgess v. JHM Hotels, LLC*, 2010 WL 1493132, at *6 (D.S.C. Apr. 13, 2010). The court does not see the need to decide this issue at this stage of the litigation. Plaintiff has sufficiently plead facts that would support her claim for retaliation in violation of the FMLA. However, any assertion of retaliation in violation of "OSHA" fails to state a claim, as there are no private causes of action under OSHA. *See Scarborough v. Aegis Commc's Group, Inc.*, 217 F.3d 840, at *1 (4th Cir. 2000)

Defendant next argues that Plaintiff's claim for intentional infliction of emotional distress ("IIED") or, in the alternative, negligent infliction of emotional distress, fails to state a claim because her Complaint fails to set forth facts that satisfy the "extreme and outrageous" standard as a matter of law. The court agrees. Under North Carolina law, a plaintiff must allege "extreme and outrageous conduct" in order to state a claim for IIED. *See Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Whether the conduct meets this standard is a question of law for the court to decide. *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311 (1985). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986). Plaintiff's allegations simply do not rise to the egregious level necessary to support a claim for IIED. Plaintiff's "alternative" claim of negligent infliction of emotional distress must likewise fail, as Plaintiffs has failed to allege any elements or facts in support of this claim.

In order to establish a claim for negligent retention or supervision, a plaintiff must allege and prove: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 249-50 (4th Cir. 2000). Plaintiff's Fourth Cause of Action appears to center on the behavior of Mr. Yauger and his "unlawful and unfair conduct" towards the Plaintiff. *See* Compl. at ¶ 43. The problem with Plaintiff's claim is that she fails to allege an actionable "tortious act." Her factual allegations as to Mr. Yauger describe conduct that is mean and insulting, but not tortious. Moreover, Plaintiff's only surviving claim is one of retaliation in violation of the FMLA. This claim cannot serve as the underlying tort in support of her claim, as it is not a common law tort under North Carolina law. *See McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003); *Bond v. Rexel, Inc.*, 2011 WL 1578502, *8-9 (W.D.N.C. Apr. 26, 2011).

Plaintiff's final cause of action, for "vicarious liability," must also be dismissed because, as Plaintiff concedes, it is not a stand-alone cause of action. *See Bond*, 2011 WL 1578502 at *9. Plaintiff asserts that it was "mistakenly included as a claim." Accordingly, it will be dismissed.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby GRANTED as to all claims except for Plaintiff's retaliation claim in violation of the FMLA.

Signed: August 22, 2011

Graham C. Mullen
United States District Judge